I, David M. Noordeloos, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

I am a Special Agent with the United States Department of State, Diplomatic Security Service (DSS), and am currently assigned to the Office of Protective Intelligence Investigations at DSS Headquarters in Arlington, Virginia.  I have served as a Special Agent since 2002 and was a municipal police officer in Michigan for six years prior to joining DSS.  I have conducted many investigations regarding violations of the United States Code, which have focused on fraud, protective operations of both U.S. and foreign officials, threats to United States Government and foreign officials, and have previously served in a number of assignments located at U.S. embassies and consulates overseas.

I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, as well as DSS agency-specific training throughout my time as a Special Agent.  The latter has afforded me training in such areas as interviewing, executing search and arrest warrants, threat assessment and investigations, investigations involving a nexus to international diplomacy, and training for service as a DSS Special Agent at U.S. diplomatic facilities abroad.

Based on my own experience and in discussions with other Special Agents and investigators, I have learned additional information about criminal threat and harassment investigations, crimes involving U.S. and foreign diplomatic personnel within and outside of the United States, as well as the use of digital devices in committing criminal violations.  My training, education, experience, and discussions with other Special Agents have afforded me familiarity with the operations and management of Department of State protective security details (both inside and outside of the United States), the context in which security threats arise and the actions

necessary to mitigate those threats, the political and legal sensitivities that may be involved in an investigation of a crime involving diplomatic personnel, and the long-term trend analysis that is required in threat investigations. As a Special Agent, I have participated in the execution of local, state, and federal search and arrest warrants, including those regarding items and/or communications sent via the mail or via electronic devices.

This affidavit contains information developed in the investigation by me or furnished by other law enforcement personnel. This affidavit contains information regarding probable cause that a criminal violation has taken place, but does not contain to the totality of information known to me or other law enforcement personnel regarding the subject or incident.

**FACTS**

The information presented below establishes probable cause that Furong AI, AKA Ai FURONG (AI), a citizen of China who possesses the State of New York driver license 773485877, with a date of birth of November 4, 1961, committed certain violations of the United States Code. These violations occurred on February 20, 2019, and April 3, 2019.

*February 20, Incident*

On February 20, 2019, a delegation from the Government of the People's Republic of China, including Vice Premier Liu He (hereinafter, "the Protectee"), was present in the District of Columbia on an official visit, during which the Vice Premier met with U.S. Government officials, including the U.S. Trade Representative. During this official visit, DSS Special Agents were providing protection to the Protectee and the delegation, pursuant to the agents' authority under section 103 of the Diplomatic Security Act (18 U.S.C. § 4802).

During this official visit, the Protectee and his delegation resided at the Willard Hotel, located at 1401 Pennsylvania Avenue, NW, in the District of Columbia. The Willard Hotel has a

pedestrian entrance/exit on Pennsylvania Avenue and on F Street NW. On the morning of this date, Chinese diplomats who were either part of the Protectee's traveling delegation or assigned to the Chinese Embassy in the District of Columbia were using the F Street NW exit to board shuttle vans that had been hired by the Embassy to transport personnel to the hotel.

On this date, your affiant made contact with AI when AI was standing in front of one of these shuttle vans as it began to depart from the curb adjacent to the hotel's F Street entrance. AI stood with his back to the shuttle bus and was preventing it from departing. Your affiant and DSS Special Agent C.H. responded from their general exterior positions on F Street NW and your affiant had to physically remove AI from his position in front of the shuttle bus. At the time of this incident your affiant was in business attire and wearing a DSS protection lapel pin and radio wires in his ear; DSS Special Agent C.H. was attired in casual clothing while wearing a DSS identification jacket. Your affiant detained AI for investigative purposes, ran relevant records checks, and offered the Willard Hotel the opportunity to serve AI a District of Columbia Superior Court form CIR-12-01 Barring Notice, which they opted to do as AI had been interfering with the Chinese diplomats' (who were guests of the hotel) ingress/egress to the hotel. AI provided a New York State Drivers License as proof of identity and he was served the captioned barring notice and provided a copy of same. As this was your affiant's first contact with AI, your affiant opted to initiate the least intrusive method of enforcement activity and solely served AI with the captioned barring notice.

As a result of this incident, AI was included in a March 29, 2019, DSS Protective Intelligence Bulletin that was prepared in advance of the DSS protective detail being operational to support the Protectee's return to the District of Columbia in April 2019. As part of your affiant's

role in these protective functions, your affiant briefed the captioned Protective Interest Bulletin to DSS personnel participating in the protection detail that began on April 2, 2019.

*April 3, 2019 Incident*

On April 3, 2019, the Protectee was again in the District of Columbia on an official visit to meet with U.S. Government officials. During this visit, the Protectee and his delegation were again residing at the Willard Hotel. In addition to the pedestrian entrance/exit on Pennsylvania Avenue, NW, and another on F Street, NW, the Willard Hotel has an underground parking garage with a single entrance/exit ramp located on F Street, NW, close to mid-block between 14th and 15th Streets, NW.

During previous Chinese government delegation visits to the United States, DSS had observed protests and harassment directed at these delegations, including instances in which persons have attempted to run in front of motorcade vehicles or approach a DSS protectee on foot. Accordingly, on April 3, 2019, DSS again arranged to use the Willard Hotel's underground garage for motorcade movements to and from the hotel, because that entrance/exit provided increased security.

DSS also staffed the area surrounding he departure from the Willard Hotel. DSS motorcade personnel, DSS personnel, and officers from the Metropolitan Police Department (MPD) were present prior to and during the departure on foot on F Street NW, attired in either business attire with a DSS protection pin on their lapel, or in casual clothing while wearing DSS-issued high-visibility identification jackets. These jackets were worn as the outer-most garments and are dark blue in color with light grey reflective wording printed on the jackets. On the left front, this wording includes a DSS Special Agent badge and on the right front there are the words

"Diplomatic Security Service". On both the left and right sleeves of the jacket there is the word POLICE. On the back of the jacket, there is the word POLICE with FEDERAL AGENT just below.

At approximately 9:15 a.m., DSS personnel made contact with an Asian male near the garage exit who had been identified by Chinese embassy security personnel as likely affiliated with a protest group who had previously interfered with DSS protective operations. When contacted by your affiant, the male indicated that he did not speak English. DSS personnel asked for assistance from the Chinese embassy personnel. Ultimately, the male individual admitted, in Mandarin, that he was a protester and that he had intended to run in front of the motorcade.

While DSS personnel continued to observe the male protester in the area of the hotel garage entrance, at approximately 9:20 a.m. on April 3, 2019, the DSS motorcade containing the Protectee (and other Chinese diplomats who were members of the Protectee's delegation) exited the Willard Hotel's underground garage, led by a marked Metropolitan Police Department (MPD) vehicle, and proceeded eastbound on F Street NW. When the vehicles exited the garage onto F Street NW, both the MPD and DSS vehicles' red and blue police lights and audible sirens were operating.

As the DSS motorcade proceeded eastbound on F Street NW thru 14th Street NW, AI ran from the southeast corner of F Street NW and 14th Street NW, directly in front of the Corner Bakery restaurant, toward the moving DSS limousine. AI was holding a white paper with what appeared to contain Chinese writing in his hands as he approached the DSS limousine, and came within five feet of the DSS limousine, which was forced to come to a halt. In response to AI's action, the entire DSS motorcade came to a halt and both DSS Shift Leader R.S. in the follow vehicle (behind the limousine) and the DSS Mobile Security Deployments Team Leader J.C (in the MSD vehicle behind the follow vehicle) were forced to abandon their assigned duties in the Protective detail's

motorcade movement, dismount from their assigned vehicle positions, and remove AI from in front of the stopped DSS limousine.

After AI was pushed out of the way, the above DSS agents re-entered their vehicles and continued with the motorcade movement. This is consistent with DSS training; the goal of DSS motorcade movements is to "get off the X" and not allow the motorcade vehicles to be stopped. DSS personnel, who would otherwise have taken AI into custody, remained near the hotel garage entrance near the other male Chinese protestor and were unable to arrive at the incident location in time to take custody of AI prior to the motorcade's resuming its departure.

A photo of the incident from an online video was provided to DSS by members of the Chinese delegation security personnel which clearly shows AI wearing a two-tone blue North Face jacket, a dark-colored winter cap and holding a sign. This photo and clothing also match the image of AI in video surveillance captured by DSS. This video also clearly shows AI's above described actions in this incident.

Based on this conduct by AI outside of the Willard Hotel on February 20, 2019, and April 3, 2019, there is probable cause to believe that AI (1) willfully attempted to and did intimidate and harass a foreign official and official guest, China's Vice-Premier Liu He, and attempted to and did obstruct that foreign official in the performance of his duties, in violation of 18 U.S.C. § 112(b), and (2) knowingly and willfully obstructed, resisted, and interfered with a federal law enforcement agent engaged in the performance of the protective functions authorized under the Diplomatic Security Act (22 U.S.C. § 4802), in violation of 18 U.S.C. § 118.

_____
David M. Noordeloos
Special Agent
Diplomatic Security Service

Subscribed and sworn before me this \_\_\_ day of April, 2019.

_____
The Honorable Deborah A. Robinson
United States Magistrate Judge