UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | **1:19-mj-00083 (DAR)** |
| **FURONG AI,** | : | |
| | : | |
| Defendant. | : | |

**JOINT MOTION TO TEMPORARILY REVOKE DEFENDANT'S RELEASE**

    The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, through his undersigned counsel, hereby respectfully request that the Court revoke the defendant's release in this case until such time as the trial related proceedings scheduled for next week conclude and the defendant is returned to the custody of Immigration and Customs Enforcement (ICE) and from whose custody he will be produced pursuant to this Court's Writ of Habeas Corpus ad Prosequendum (Writ).  The Government submits that the defendant – who is currently released on his personal recognizance in this case – would pose a serious risk of flight if brought back to the jurisdiction and released on his own recognizance, and that he may therefore be detained pursuant to 18 U.S.C. § 3142(f)(2)(A).   The defendant joins in this request and waives his right to a detention hearing on the motion.

**RELEVANT BACKGROUND**

    As relevant to this motion, the defendant was released on personal recognizance at his initial appearance on October 15, 2019.  *See* ECF No. 3 (Order Setting Conditions of Release). The Government did not request pre-trial detention.   At the initial appearance, the defendant was served with a "Call-In Letter" issued by ICE Deportation Officer (DO) Mark Tlumacki.   The letter

directed the defendant to appear for an appointment with ICE on October 21, 2019.  The defendant did not report as directed.

As a result of the defendant's failure to appear, DO Tlumacki attended the defendant's status hearing in this matter on November 7, 2019.  After Court had recessed, DO Tlumacki approached the defendant and his attorney, identified himself, and advised that he had an Administrative Warrant for the defendant's arrest, but that he was not going to take the defendant into custody at that time.  Instead, DO Tlumacki advised that he would place the defendant in the Alternative to Detention Program and install a GPS monitoring bracelet on the defendant.  As the parties were about to exit the courtroom to proceed with the installation, the Court called the case back in session and all parties were instructed to remain in the courtroom.

Upon conclusion of the proceedings, the defendant rapidly exited the courtroom and fled from DO Tlumacki and his partner.  The defendant was quickly apprehended outside the courthouse, placed under arrest, and transported to the ICE holding room in Lorton, Virginia for processing.  The defendant was subsequently transferred to the Caroline Detention Facility in Bowling Green, Virginia and remains detained there under ICE authority.

On December 4, 2019, the Court issued a Writ of Habeas Corpus ad Prosequendum to ICE ordering the defendant be produced to the U.S. Marshals Service (USMS) for the purpose of appearance before the Court in this case on December 16, 2019 at 10 am, and upon conclusion of the proceedings (i.e., the December 16 motions hearing and trial on December 17 and 18), to be returned to ICE custody.[1]  *See* ECF No. 19.

As the USMS currently have no authority to detain the defendant given that he has been

---

[1] The Government intends to file for a revised writ tomorrow seeking the defendant's production earlier than required by the December 4 Writ.  The revised writ is being requested in response to the defense's request to the undersigned SAUSA that the defendant be brought to the DC area as soon as possible to permit defense counsel easier and more timely access to the defendant to prepare for next week's proceedings.

released on his own recognizance in this case, the defendant would either have to be released on his recognizance or transported back and forth from the Caroline Detention Facility in Bowling Green, Virginia every day. Such a transportation regime would entail the defendant being awoken at 2 am every day to make it timely into Court and then returned following completion of the Court day. Assuming a full day in Court, the defendant would not likely return to the facility in Bowling Green until approximately 10 pm.

## ARGUMENT

The Bail Reform Act identifies four factors that guide a court's detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. §3142(g).

At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). A judicial determination that a defendant should be detained pending trial as a serious risk of flight need only be supported by a preponderance of the evidence. *United States v. Vortis*, 785 F.2d 327, 328 (D.C. Cir. 1986).

Based on the defendant's flight from the detention officers in November, the Court should find that, by a preponderance of the evidence, no condition or combination of conditions would reasonably assure the defendant's appearance at this time were he produced to the USMS by ICE and then released during the pendency of the upcoming proceedings.

Furthermore, the Government and the defense are in agreement that having to transport the defendant back and forth between Bowling Green, Virginia and Washington, DC every day would not be efficient, nor conducive to the defendant's preparation for and participation in trial.

Should the Court revoke the defendant's release as the parties request herein, the defendant would be held in Washington, DC for the duration of the time before he was returned to ICE's custody. Detention locally, as opposed to in Bowling Green, Virginia, would be beneficial to the defendant and it will allow his counsel easier and more timely access to him.

### **Government's Factual Proffer**

The defendant is charged with obstructing and attempting to obstruct a foreign official in the performance of his official duties on two separate occasions, and the Government's evidence that he did so is strong. In February of this year, the defendant physically stood in the way of a shuttle bus attempting to leave the Willard Hotel to transport members of the visiting Chinese delegation and Chinese Embassy personnel to a trade meeting. The defendant had to be physically removed by a Diplomatic Security Service (DSS) agent before the shuttle bus could depart. In the second instance, occurring in April of this year, the defendant ran into the intersection of 14th Street and F Street, NW while the motorcade of the Chinese delegation was crossing through it. The defendant waited until the marked Metropolitan Police Department (MPD) lead car had passed and then ran directly in the path of travel of the oncoming armored limousine in which Vice Premier Liu He of the People's Republic of China was travelling and that was following the MPD vehicle. As a result of the defendant's presence in its direct line of travel in the roadway, the limousine was forced to come to a complete stop directly in front of the defendant. Once again, the defendant had to be physically removed by DSS agents. Both incidents were caught on video and clearly depict the defendant's obstruction of the vehicles and the Chinese officials in them.

As related to his history and characteristics, the defendant is currently being detained by ICE and upon conclusion of the pre-trial and trial proceedings in this case next week, and will be

returned to ICE custody.    The defendant does not believe his detention by ICE is proper; during processing for his ICE arrest, the defendant stated that he believes the Government has no right to arrest him and is violating the law.    *See* Ex. A at 2.    Having twice defied ICE instructions, including the defendant's flight from the deportation officers described above, it is clear that the defendant will do whatever it takes to avoid ICE custody.    Thus, it very likely that, if released on his own recognizance once out of ICE's custody, the defendant will not appear for court in this matter, as he knows he will be returned to ICE custody upon conclusion of the court proceedings.

As to the risk his release would pose to the safety of others or the community, the behavior for which the defendant is charged and which he could easily engage in again if released, does put himself and others at risk.    Running into the street into oncoming traffic is inherently dangerous and someone could easily get hurt (although thankfully no one has thus far).

## **CONCLUSION**

For the foregoing reasons, the parties request that the Court order that the defendant be detained as a serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), for the limited time period in which the defendant will not be in ICE custody as a result of his required appearance in this Court for pre-trial hearings and the actual trial in December and pursuant to this Court's Writ of Habeas Corpus ad Prosequendum.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar Number 472-845

By: /s/
REAGAN N. CLYNE
Virginia Bar No. 74767
Special Assistant U.S. Attorney
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Reagan.Clyne@usdoj.gov
(202) 252-7215


FURONG AI
Defendant


By: /s/
MICHAEL E. LAWLOR
NICHOLAS G. MADIOU
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301.474.0044
mlawlor@verizon.net
nickmadiou@gmail.com